The statement of facts agreed on in this case set forth: That John Wiltbank, late of Kent county, dec'd., by his last will, c., devised and bequeathed as follows: — "I give and bequeath unto by beloved wife Elizabeth, all the rents and profits of all the real estate wherewith I am possessed, to be paid to her by my executor hereinafter named, during the term of her natural life; and after the decease of my said wife, my desire is, that my executor do dispose of and sell my said real estate, and pay over the nett proceeds thereof, to the trustees of the Methodist Episcopal Church in Dover, by whatever name or style they may be known in law, to be by the said trustees of the said M. E. Church applied in such manner as they shall devise, towards educating poor children of members of said church." The said real estate was sold on judgment and execution against the testator, and the proceeds, after payment of debts, was paid over to the present defendant. The trustees of the Methodist Episcopal Church are incorporated under the "Act to enable all the religious denominations in this State to appoint trustees, who shall be a body corporate, for the purpose of taking care of the temporalities of their respective congregations." The suit was brought by the heirs at law of John Wiltbank, to recover the balance of the proceeds of his real estate, so remaining in the hands of Martin W. Bates, his administrator; and it was agreed that the court, in considering and *Page 19 
deciding this cause, should not only be governed by the principles and rules of law, but should view and consider the case as it would stand in a court of equity, upon a bill of interpleader on the above facts, filed by the administrator against the heirs at law and trustees of the said church in their corporate character; or, upon a bill filed by the said trustees against the administrator and heirs at law, for the purpose of carrying into effect the said bequest to the said trust-tees as aforesaid.
Frame, for the heirs at law. A devise of this sort cannot be sustained in a court of law. 1st. This is a devise to the trustees in their corporate capacity, and not to them as individuals; it is to the trustees, c. "by whatever name they may be known in law." 2d. This is substantially a devise of land, and must so be treated; it is so treated in England under their statute of mortmain, and our act of assembly is a statute of mortmain. The proceeds of the sales of land are considered as land itself. 14 Vez. 541; 2Wms. Ex'r. 699, 703; Ambler 20. The stat. 9 Geo. 2, prohibited devises of lands to corporations. And this excludes all interest in land. 5 Mad. 202; 6 Mad. 52. Nothing, that in the least partakes of the realty, can pass under the statute of mortmain. 3 Brown, C. G. 380; 4 Cond. Ch. 328; 2ditto 361. Gift of the price of land is a gift of the land itself. 1 Cond. Ch. 606; 2 Fonb. 215.3d. This is either a devise of lands to trustees for the use of the church, or it is a devise to them for a purpose foreign from the purposes of their incorporation; if the former, it is void by the express terms of our statute of mortmain (Dig. 459,) — if the latter it is void at common law, for they do not exist, and cannot take, for any other objects than those specified in the charter. Sec. 1. They are incorporated for the "intents and purposes in this act mentioned." Sec. 2. They are to take "to and for the use of their respective societies or congregations." And they cannot take for any other purpose. 8 Johns. 330. Stat. mortmain is in part applicable and in force, so far as relates to grants or devises to corporations, unless they are authorized by their charters to take. 3Binn. 606; Our stat. (Dig. 459) is an enabling statute; it creates limited corporations which have no other powers than those granted. There is then no trustee to take this gift, and it is absolutely void at law.
Can it be sustained in equity in our state and under our system of chancery jurisdiction? Will our Court of Chancery sustain and attempt to give effect to a devise, where there is no trustee to take? and where the objects of the charity are undefined, and undefinable? In England, chancery has gone to an alarming extent in the executioncy pres of these void bequests; as to convert a devise to a jewish synagogue into a bounty to a fondling hospital; and to give to protestants *Page 20 
bequests to the catholic church (Amb. 228; 2 Lev. 167; 2Vern. 266, 453;) but the English chancery jurisdiction on this subject is derived from the Stat. 43 Eliz., which is not in force here. Peters 138, 481, 498, 493; 4 Wheaton 29, 146; 1Chan. Cases 267; 3 Vez. 726; 1 Meriv. 75, 86, 94, 99; 3 Cond. Em. Ch. 177; 2 Vern. 118. Our chancery must exercise this jurisdiction independent of the 43 Eliz.; must be governed by the ordinary principles of equity jurisdiction, and not those derived from that statute. This devise then is void, and cannot be carried into execution, because there are no trustees to take, and because the objects of the bounty "poor children," are too vague and uncertain, there being no persons who can come into court and claim, no trustees who can designate who the poor children are, nor can the chancellor make the designation or appoint a person to designate, for this would be exercising a discretion which the testator meant to confide in the trustees of the church.
Bates, in support of the devise. Lands were not devisable at common law. Stat. 34 and 35; Hen. 8, enabled persons to devise lands, except to corporations. Lands are devisable in Delaware, without any such exception. (Appx. 1. Del. Laws 11.) Devises to trustees or corporations for charitable purposes, were good before the 43 Eliz., which was merely declaratory of the common law, and providing a remedy for the enforcing the execution of the trust. The stat. of Geo. 2, prohibited future devises to corporations for charitable uses; but it is not the devise to the corporation, but the use that was prohibited by this statute. There is not the same reason here for our statute of mortmain embracing charitable uses; no established religion, and no connection between the church and state. Devises to a corporation for charitable uses were good before the Stat. Eliz. and though void by the stat.Hen. 8, they were held good if for charitable purposes. The great question is not who is the trustee, but what is the use; if the use be good, the court will enforce it and provide a trustee. 1 Wm.Blac. 91; Plowd. 523; 1 Mad. Eq. 47; 1 Eden.
14; 2 P. Wms. 119; 1 Brown Ch. 15; 2 Vern 342; 7 Vez. 69; 3 Peters 140, 190; 3 Binney 622; 2 Kent'sCom. 285; 4 do. 507-8. These cases show that the 43Eliz. introduced no new law. Our act of assembly gives the same jurisdiction to chancery as in England; and this case is to be considered by the court and determined on chancery principles. In England, no uncertainty in the object defeats the devise; and there is no uncertainty as to these cestuis que trust. They are to be selected by the trustees — those persons who shall be trustees for the time being. The testator had confidence in the society, and selected as the dispensers of his bounty those persons whom the society should elect as its officers. The devise is not *Page 21 
to the society, as a society, nor for its benefit; the children of members are not considered as members of the society, or any part of the church. And if the devise to the trustees in their corporate capacity were void because they could not take in such capacity, the object being legal, the court will hold the heirs at law as trustees for these cestuis que use, and compel them to execute the trust. 2Fonb. 146; Ambler 641; 1 Brown 12, 81; Co.Litt. 113, a. n. 2; 3 Peters 152, 119; 1 Bac. ab.
366.
Clayton, for plaintiff. The English decisions, as to charitable uses, depend on the constitutional law of the land. Lord Eldon
(7 Vez. 87) speaks of the doctrine, as of the constitutional law of England; not a portion of the statute or common law, but as inherent in the organization of the English government. A leading feature of that government is, the connexion between the church and state. 2 Swanst. 573; 3 Hume 111. The Christian religion is a part of the law of England: that is, the faith or religion of the established church. The contest between the catholics and protestants, is the basis of the union of church and state, and of the doctrines which were drawn out of the 43 Eliz., in relation to charities.Hume 189. In 1584, the statute prohibiting the catholic religion was passed; popish priests ordered from the kingdom. 1593, statute against recusancy passed. In 1601 catholics and protestants were in high "hostility, and in this year the statute 43 Eliz. passed. It forms a prominent part of the structure of the English government. The constructions placed upon it by the chancery courts, were in accordance with the policy of the government, that of breaking down all other churches and advancing the religion of the state; and for this purpose this doctrine of charitable uses was created. It can have no such object or use here; and the power there exercised by the chancellor of executing trusts cy pres does not belong to, and cannot be exercised by our chancellor. The statute of 43 Eliz.,
is not in force here, and without it the right of the heirs at law in this case to recover is certain. The conveyance in the case cited from 1 Win. Blac. 91, was established under the statute. (3Peters 491.) There is no case where the defect was aided before the statute. 4 Wheaton 40. Marshall, Story, and Johnson united against this jurisdiction before the 43 Eliz.; and 1 Brown
15 is there answered.
The chancellor would have to exercise an absolute discretion, if he assumed the power to make a" trustee; according to the English law, he would have to make one of the established protestant faith; but here he might appoint to educate these methodist children a Jew, Catholic, or Turk. It would be impossible to educate them as the testator intended, except by the trustees of this church; and if they *Page 22 
cannot take, the devise is void. No more can the heir at law be the trustee, for the same objection might apply to him; and it was not in his discretion that the testator confided, either as to the mode of education, or the selection of the objects of charity. 2 Wms. onEx. 703. Bequests for the relief of the poor, c. c., are deemed bequests for charitable uses. Is not the devise to the poor of a society, a devise to that society? By any other construction the law may be evaded, and its spirit and object defeated. Its great objects were to prevent lands being tied up in religious hands, and to prevent impositions on the weak and dying. If this devise were to pay the minister's salary, it would come no more within the words of the act, and yet it would violate its spirit as much as a direct devise to the church. Such a devise is void by the act of 1787; and the act of 1744 prohibits their taking for any other purposes than those specified therein. These two-acts form our law on this question, and on these it must be decided.
The act of assembly points out the mode in which religious societies can lawfully take and hold real estate. It is by deed alone, and cannot be done through a last will; all devises, therefore, of land to a religious corporation, are void. So too a devise to such a corporation of money to arise out of land by sale or otherwise is void. The law holds the proceeds as realty, and a devise of the proceeds subject to the same rule as a devise of the land itself.
The devise in question is of the nett proceeds of sale of the testator's real estate, to the trustees of the Methodist Episcopal Church in Dover, by whatsoever name they may be known in law, to be by those trustees applied in such manner as they shall devise, towards educating poor children of members of that church.
This is a direct devise to the trustees of the church in their corporate capacity, for the benefit of the poor children of the members of the church. It cannot avail or take effect under the act of assembly of 1787, Digest 459, for under it all devises of land to religious corporations are void; nor can it be sustained under the act of 17 Geo. 2; (Dig. 457,) on the ground of its being a devise for charitable purposes, for by the 4th section of that act it is declared, that such societies, or any persons in trust for them or to their use, shall not be authorized by that act to take or receive any lands, c., by gift, grant, or otherwise, for or towards the maintenance or support of the said churches, houses of worship, schools or almshouses, or the people belonging to
the same, or for any other use or purpose, save for the usesin that act mentioned.
This was an enabling act in favor of religious societies, to give them a power to do what previously they could not legally do. It *Page 23 
authorized them to take land by gift or otherwise, "for burying grounds, erecting churches, houses of religious worship, schools and almshouses," but also declares that they shall not be thereby authorized to take lands, c., for the support ormaintenance of such churches, schools, c., or the people belonging to the same, or for any other use or purpose. Under this act such societies have no power to take lands for the support or maintenance of churches or schools, or the people belonging thereto, or for any other purpose than those specified in the act; that is, for burying grounds, erecting churches, places of worship, schools and almshouses. Corporations are the creatures of the law — they exist by the law, and in the manner and for the purposes and objects specified in the law creating them; when created, they cannot exercise a power which the law creating them has expressly denied to them. This society cannot avail itself of this devise under the act of 1787, for it cannot take lands under that act in this way, and the sales of land are to be taken as we have said, as land itself. It cannot establish any title or right to it under the act of Geo. 2, as being a devise for charitable purposes, for the power of such a society to take lands or its proceeds for the maintenance or support of schools,
or for any other purposes than those declared in the act is negatived and denied. To allow them to do this to sustain a charitable devise, would be to admit them to have a capacity and power which the law creating such corporations, declares they shall not possess. This cannot be done even in a court of equity, and for charitable purposes.
Under the act of Geo. 2, such a corporation had the political capacity to take lands by devise, prior to the act of 1787: it authorized them to take in this way, for certain purposes which are enumerated, and for certain purposes only; the maintenance and support of schools is not one of these purposes, and is so expressly declared; — they were not authorized to take lands "for any other purpose "than those specified. This religious society, therefore, cannot sustain p. claim to a devise of the sales of land for educating the poor children of its members. Judgment must, therefore, be given for the plaintiffs, the heirs at law of the testator, who are entitled to the proceeds of sale of the land remaining in the hands of the administrator.